LAW OFFICE OF

# JEFFREY S. DUBIN

464 NEW YORK AVENUE
SUITE 100
HUNTINGTON, NEW YORK 11743

TELEPHONE
(631) 351-0300
TELECOPIER
(631) 351-1900
INTERNET
DubinJS@cs.com

**October 12, 2010**

**Hon. Martin Glenn**
**United States Bankruptcy Court**
One Bowling Green
New York, New York 10004

Re:  *OMC, Inc.*, SDNY Chap 11 Case No. 10-14864-MG
 *OMC, Inc. v*. Local *Union 28 et al*, Adv. Proc. No. 10-3875-mg

Dear Judge Glenn:

I am the attorney for the Trustees of the Sheet Metal Workers' National Pension Fund (SMWNPF), one of the defendants in this adversary proceeding. This letter constitutes SMWNPF's preliminary, summary objections.

I first received OMC's Complaint, Memo of Law, Declaration of Michael Cecchi, etc., this morning at about 10:30 a.m. My client's office is located in Alexandria, Virginia. The Trustees of this ERISA Fund live in various cities throughout the United States. The SMWNPF's General Counsel was traveling by air today. I have been unable to contact my client or its General Counsel. I object to having to answer this proceeding on unreasonably short notice and without having any opportunity to consult with my client.

The SMWNPF is an unincorporated trust, subject to the Taft-Hartley Act, 29 U.S.C. 186(c), and ERISA, 29 U.S.C. Section 1001 *et seq*. It is a separate legal entity from the other defendant, Local Union 28 of the Sheet Metal Workers' International Union (Local 28). Although OMC seeks to blend together the actions of the SMWNPF and those of the other defendants, it presents no evidence that the SMWNPF encouraged, authorized, ratified or directed the actions of any other defendant. Strangely, some of OMC's papers identify "Ralph Tortora" as a defendant. Others, identify "Ray Mineri" as a defendant. Neither of these persons are agents or employees of the SMWNPF. Neither of these persons are authorized to do anything on behalf of the SMWNPF. The SMWNPF has not taken any steps that would clothe either of these persons with apparent authority to act on behalf of the SMWNPF.

OMC seeks to color the SMWNPF's termination of OMC from the national pension plan as a calculated scheme to force OMC to pay pre-petition delinquent contributions. The facts do not support this theory. The SMWNPF sent its termination notice to OMC on September 13, 2010, two days before OMC filed its Petition. Two days before the SMWNPF had any idea that OMC would file a Petition.

The SMWNPF sent termination notices to many employers, not just OMC. The resolution of the Trustees to terminate these employers is dated July 27, 2010. The

Trustees of the SMWNPF were seeking to protect the SMWNPF, not collect pre-petition delinquencies.

OMC states that the SMWNPF sent notices to OMC's employees. The inference is that the SMWNPF was urging OMC's employees not to work for OMC. The SMWNPF did not send notices to OMC's employees. The SMWNPF sent notices to its plan participants and OMC, actions that it was required to take by ERISA, see 29 U.S.C. § 1054(h).

OMC states that two of its employees quit as a result of the notices sent by the SMWNPF. We do not know why two employees quit. In the construction industry employees commonly move from employer to employer. That is why multi-employer benefit funds were created. No evidence has been submitted from the two employees setting forth their reasons. Further, there is no evidence that the SMWNPF asked, required or encouraged anyone to quit. Neither is there any evidence submitted about the number of employees that have not quit.

OMC is not likely to succeed on the merits. The cases it cites are not relevant to this proceeding. *In re A.C.E. Elevator Co., Inc.*, 2009 WL 3255381 (Bankr. SDNY 2009), and *Elsinore Shore Associates v. Local 54, Hotel Employees*, 820 F.2d 62 (3rd Cir. 1987), both involve a union work stoppage. The SMWNPF is not a union. It has no authority to order a work stoppage. It did not order a work stoppage. It did not urge a work stoppage. It did not authorize anyone to urge a work stoppage.

*In re A & C Electric Company, Inc.*, 188 B.R. 975 (Bankr. ND Ill. 1995, aff'd., 193 B.R. 856 (ND Ill. 1996), does involve an employee benefit fund somewhat like the SMWNPF. However, it was a local fund, associated with a local union. The SMWNPF is not a local fund and is not associated with a local union. The SMWNPF is a national fund. Further, the benefit fund in that case was clearly seeking the collection of pre-petition debts. The benefit fund in that case also actively urged the debtor's employees not to work. The SMWNPF has not performed any of those actions. The SMWNPF has done nothing that affects the pre-petition debts of OMC. In fact, termination of OMC's participation in the Fund makes it less likely that the SMWNPF will collect any of the pre-petition delinquencies of more than $1,000,000.00.

*Maritime Asbestos Legal Clinic v. LTV Steel Co. (In re Chateaugay Corp.)*, 920 F.2d 183 (2nd Cir. 1990), involves an interpretation of who may seek damages for a violation of the automatic stay. The case does not decide any issues as to what constitutes a violation of the automatic stay.

The termination of OMC and the other employers by the SMWNPF does not affect OMC's pre-petition debt. Rather, the termination protects the SMWNPF prospectively from damage. OMC's employees continue to be participants in the SMWNPF. The employees continue to be members of Local 28. The employees continue to be employees of OMC. The SMWNPF achieves protection in the future as ERISA requires it to grant pension credits, whether or not it collects contributions from the employer. It is inequitable not to allow the SMWNPF to protect itself. It is inequitable to require the SMWNPF to remain locked in the embrace of an employer, which it believes will cause it additional harm in the future.

The public policy of the United States, as expressed in ERISA, strongly favors maintaining the financial viability of pension funds such as the SMWNPF. Both 29 U.S.C. § 1132 and 29 U.S.C. § 1145 reflect that concern. They offer strong tools to funds in collecting their contributions. These tools are not available to most creditors. The Second Circuit has concluded that Congress placed such pension plans, the third party beneficiaries of collective bargaining agreements, in a position superior to that of the original promisee, analogous to that of a holder in due course, see *Benson v. Brower's Moving & Storage, Inc.*, 907 F.2d 310, 314 (2nd Cir. 1990), cert. Den., 498 U.S. 982, 11 S.Ct. 511, 112 L.Ed.2d 524.

"This standard reflects the 'most important purpose' of ERISA, which is 'to assure American workers that they may look forward with anticipation to a retirement with financial security and dignity, and without fear that this period of life will be lacking in the necessities to sustain them as human beings within out society.' S.Rep.No. 93-127 (1973), reprinted in 1974 U.S.C.C.A.N. 4838, 4849." *Demirovic v. Building Service 32 B-J Pension Fund*, 467 F.3d 208, 215 (2nd Cir. 2006).

The SMWNPF has not taken any action that requires employees of OMC to leave their employ. The SMWNPF has not taken any action that seeks to coerce OMC to pay its pre-petition debt. The SMWNPF has demonstrated its intent is to protect itself from future home. OMC has not offered any case support for its position that is directly on point. In fact, its cites are not relevant. This Court is respectfully urged to uphold the public policy of the United States as expressed in ERISA, and allow the SMWNPF to protect itself from further harm.

            Very truly yours,

            /s/ Jeffrey S. Dubin