```
UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------------x   NOT FOR PUBLICATION
In re:                                                                  :
                                                                        :
OMC, INC.,                                          :
                                                                        :
                              Debtor.               :
------------------------------------------------------------------------x
OMC, INC.,                                          :
                                                    :
                                                    :                   Chapter 11
                                                    :                   Case No. 10-14864 (MG)
                              Plaintiff,            :
                                                    :
                        v.                          :
                                                    :
LOCAL UNION 28 OF THE SHEET METAL WORKERS':
INTERNATIONAL UNION, SHEET METAL WORKERS':          Adv. Pro. No. 10-3875 (MG)
INTERNATIONAL UNION, AFL-CIO, SHEET METAL           :
WORKERS' NATIONAL PENSION FUND, and RALPH           :
TORTORA,                                            :
                              Defendants.           :
------------------------------------------------------------------------x
```

**MEMORANDUM OPINION GRANTING APPLICATION FOR TEMPORARY RESTRAINING ORDER**

*A P P E A R A N C E S:*

RATTET, PASTERNAK & GORDON-OLIVER, LLP
*Attorneys for Debtor OMC, Inc.*
550 Mamaroneck Avenue
Harrison, New York 10528
By:    Jonathan S. Pasternak, Esq.
        Dawn K. Arnold, Esq.

JEFFREY S. DUBIN
*Attorney for Defendant Sheet Metal Workers' Pension Fund*
464 New York Avenue
Suite 100
Huntington, New York 11743
By:    Jeffrey S. Dubin, Esq.

1

**MARTIN GLENN**
**United States Bankruptcy Judge**

Pending before the Court is the application of OMC, Inc. ("Debtor") for a temporary restraining order enjoining the defendants from violating the automatic stay pursuant to section 362(a)(6) of the Bankruptcy Code. The Debtor filed its case under chapter 11 on September 15, 2010. The Debtor filed this adversary proceeding and an application for a temporary restraining order and preliminary injunction against the defendants on October 12, 2010. The Court scheduled a hearing for a temporary restraining order ("TRO") for 2 PM, October 13, 2010. The defendant Sheet Metal Workers' National Pension Fund ("NPF") filed written "preliminary objections" to the application on October 12, 2010. The other defendants did not file written objections but appeared at the hearing through counsel.

According to the Verified Complaint, "[s]ince 1986, the Debtor has been and continues to be a provider of subcontracting services in the commercial heating ventilation and air conditioning ("HVAC") industry. The Debtor provides several HVAC services for its general contractors, including drafting, fabrication and installation of sheet metal ductwork for commercial buildings." Complaint ("Compl.") ¶¶ 7 and 8. The Debtor's employees are members of Local Union 28 of the Sheet Metal Workers' International Union, Sheet Metal Workers' International Union AFL-CIO ("Local 28").

This dispute arises from NPF's post-petition termination of the Debtor as a Contributing Employer to NPF, a multi-employer benefit fund created pursuant to the Taft-Hartley Act, 29 U.S.C. § 186(c) and ERISA, 29 U.S.C. § 1001, *et seq.* Pursuant to a collective bargaining agreement ("CBA") between the Debtor and Local 28, the Debtor is required to make pension

contributions to NPF on behalf of its employees.[1] Prior to filing its chapter 11 petition, the Debtor owed substantial arrears (approximately $1 million) to NPF. Indeed, in July 2010, NPF obtained a default judgment against the Debtor for the unpaid contributions. On September 12, 2010, NPF advised the Debtor in writing that it would terminate the Debtor as a Contributing Employer as of October 1, 2010 if it did not cure the payment arrears by October 1, 2010. After the Debtor's September 15, 2010 chapter 11 bankruptcy filing, representatives of NPF communicated with the Debtor's employees advising them that they would no longer earn credits for pension benefits while employed by the Debtor. Several of the Debtor's employees then terminated their employment with the Debtor and went to work for a competitor. Additionally, the Debtor has offered evidence that it has lost two substantial contracts because NPF refuses to issue pension credits to Debtor's employees during the post-petition period.

At the start of the hearing Debtor's counsel represented that all issues with respect to Local 28 have been resolved and the request for injunctive relief with respect to Local 28 and its business agents is withdrawn. Indeed, counsel for Local 28 stated at the hearing that it supports Debtor's application for injunctive relief against NPF.

After the dispute with NPF arose, the Debtor and its counsel sought to resolve the issue without litigation, offering to pay all post-petition payments to NPF on a weekly basis (unlike the usually-required monthly payments). In an exchange of e-mails and letters, NPF has taken no action to rescind its alleged termination of the Debtor as a Contributing Employer, or to advise the Debtor's employees (contrary to the information previously provided to the employees) that the Debtor remains a Contributing Employer.

---

[1] Health insurance is provided to the Debtor's employees through Local 28 benefit funds. There is no issue in this case regarding health benefits.

Based on the evidence before the Court in support of a TRO, the Court concludes that the Debtor has satisfied all of the requirements for the issuance of a TRO restraining and enjoining NPF from actions to restrict the Debtor from continuing to make required contributions and to provide the Debtor's employees with pension credits consistent with the CBA and the pension plan documents.

**THE DEBTOR HAS SATISFIED THE STANDARDS FOR ISSUANCE OF A TRO**

The Debtor seeks injunctive relief pursuant to section 105 of the Bankruptcy Code to enforce the automatic stay. Section 105 states as follows:

> (a) The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

"The Bankruptcy Court has authority under section 105 broader than the automatic stay provisions of section 362 and may use its equitable powers to assure the orderly conduct of the reorganization proceedings." *In re Chateaugay Corp.*, 93 B.R. 26, 29 (Bankr. S.D.N.Y. 1998) (*quoting In re Baldwin-United Corp. Litig.*, 765 F.2d 343, 348 (2d Cir. 1985); *see also In re Johns-Manville Corp.*, 91 B.R. 225, 227 (Bankr. S.D.N.Y. 1988). Included within the court's authority is the power to issue a TRO to prevent irreparable harm to the debtor's estate or harm to the debtor's ability to reorganize. *See In re Monroe Well Serv.*, 67 B.R. 746, 750 (Bankr. E.D. Pa. 1986).

The traditional standards for issuance of an injunction pursuant to FED. R. CIV. P. 65 are applicable to adversary proceedings under FED. R. BANKR. P. 7065. *See Eastern Air Lines v. Rolleston*, 111 B.R. 423, 431 (Bankr. S.D.N.Y. 1990). Moreover, the standards for a TRO and a

preliminary injunction are not materially different.  *See Adelphia Comms. Corp. v. The American Channel, et al. (In re Adelphia Comms. Corp.)*, 2006 WL 1529357, at *4 (Bankr. S.D.N.Y. June 5, 2006).

Within this Circuit, there are two lines of authority regarding the requirements for the issuance of a TRO on the application of a debtor in a bankruptcy case.  Under one line of cases, a TRO may be granted only if the moving party can establish (a) that it will suffer "irreparable harm in the absence of an injunction" and "(b) either (i) a likelihood of success on the merits or (ii) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in the movant's favor."  *Zervos v. Verizon N.Y., Inc.*, 252 F.3d 163, 172 (2d Cir. 2001); *see als, Polymer Technology Corp. v. Mimran*, 37 F.3d 74, 77-78 (2d Cir. 1994); *In re Feit & Drexler, Inc.*, 760 F.2d 406, 415 (2d Cir. 1985).

Under a second line of cases, courts look to several factors to assess whether a TRO should be granted.  These considerations include: (1) whether there is a danger of imminent, irreparable harm to the estate or the debtor's ability to reorganize if a TRO is not issued; (2) whether the Debtor has demonstrated a reasonable likelihood of a successful reorganization; (3) balancing the relative harm as between the Debtor and the Defendant; and (4) the public interest which requires a balancing of the public interest in successful reorganization with competing societal interests.  *See In re United Health Care Org.*, 210 B.R. 228, 234 (S.D.N.Y. 1997); *see also* 2 COLLIER ON BANKRUPTCY ¶ 105.02[2].

The estate or estate representative is "the entity with standing to seek an injunction under section 105, and must establish each element by a preponderance of the evidence."  2 COLLIER ON BANKRUPTCY at ¶ 105.03[1]; *In re Third Eighty-Ninth Assocs.*, 138 B.R. 144, 146 (S.D.N.Y.

1992). Moreover, the trial judge has discretion whether to grant a TRO or preliminary injunction. *Polymer Technology*, 37 F.3d at 78.

In addition to the above requirements, a TRO is very content specific. Under FED. R. CIV. P. 65(b)(2), "[e]very [TRO] issued without notice must state the date and hour it was issued; describe the injury and state why it is irreparable; state why the order was issued without notice; and be promptly filed in the clerk's office and entered in the record." Here, of course, the Debtor has given notice to the defendants who have had an opportunity to appear and oppose issuance of the TRO.

FED. R. CIV. P. 65(d) adds further requirements:

(1) **Contents.** Every order granting an injunction and every restraining order must:
 (A) State the reasons why it issued;
 (B) State its terms specifically; and
 (C) Describe in reasonable detail – and not by referring to the complaint or other document – the act or acts restrained or required.

A TRO is also limited in duration: "The order expires at the time after entry – not to exceed 14 days – that the court sets, unless before that time the court, for good cause, extends it for a like period or the adverse party consents to a longer extension." FED. R. CIV. P. 65(b)(2).

The multifactor test *In re United Health Care* incorporates the same elements discussed in the *Zervos* TRO standard. At this stage, the Court need not analyze which methodology is proper to follow, because the Debtor has shown that a TRO is warranted in either case.

The Court concludes that the Debtor has established a likelihood of success that NPF violated the automatic stay pursuant to section 362(a)(6) when it terminated post-petition the Debtor's status as a Contributing Employer. Section 362(a)(6) operates as a stay of "any act to collect, assess, or recover a claim against the debtor that arose before the commencement of the

case under this title." The uncontroverted record establishes that the Debtor has endeavored to make all post-petition payments to NPF, but the fund has refused to accept the payments. The record also establishes that the only articulated basis for NPF to terminate the Debtor's status as a Contributing Employer is the prepetition arrears. While NPF's counsel argued that the fund has taken no action post-petition to collect the prepetition debt, the Court disagrees. Indeed, during the argument, NPF's counsel acknowledged that the Debtor's prepetition default was the basis for the fund's actions with respect to the Debtor.

The Court concludes that the Debtor has demonstrated likelihood of success in establishing NPF's actions have been calculated to exert pressure on the Debtor to force the Debtor to remit delinquent payment contributions. As described in the legislative history underlying section 362(a)(6), "[t]he automatic stay is one of the fundamental debtor protections provided by the bankruptcy laws. It gives the debtor a breathing spell from his creditors. It stops all collection efforts, all harassment, and all foreclosure actions." H.R. REP. NO. 595, at 174-175, 95th Cong. 1st Sess. (1977). It is generally understood that the language contained in section 362 is meant to be construed broadly, so as to give effect to the protections intended therein.

The case mostly closely analogous to this case is *Divane v. A & C Electric Co., Inc.*, 193 B.R. 856, 858 (N.D.Ill. 1996).[2] The district court affirmed the decision of the bankruptcy court that ordered the fund trustees to rescind their action terminating the debtor as a participating employer from the union benefit plan. *See In re A & C Elec. Co., Inc.*, 188 B.R. 975 (Bankr. N.D.Ill. 1995). The bankruptcy court and the district court held that the trustee of an employee benefit plan violated the automatic stay by mailing to the debtor's employees a notice stating:

---

2     Appeal dismissed, 105 F.3d 660 (7th Cir. 1996).

> This is to inform you that your Health and Welfare benefits will be
> suspended effective December 1, 1995 because this employer is delinquent
> in paying amounts due to the Trust under the terms of its collective
> bargaining agreement. In accordance with the Trustees' rules, benefits under
> the trust will be suspended for employees of the above employer after the
> date shown above if the delinquent contributions are not paid by November
> 15, 1995.

*Id.*

As part of the relief, the bankruptcy court in *Devane* ordered the fund trustees "to rescind the . . . letter [advising employees of the debtor's termination] . . . , including informing the Debtor's workers . . . that such letter is to be considered ineffective and should be disregarded, unless . . . the Trustees obtain an order lifting or modifying the automatic stay . . . ." 188 B.R. at 982. The court in *Devane* ordered the fund to reinstate the debtor.

First, in terms of irreparable harm, if the conduct of NPF does not cease, the Debtor stands to lose further employees and current and future work. Since NPF's actions, the Debtor has already lost two key employees and two substantial jobs.

Second, in the context of a bankruptcy proceeding, the traditional analysis of success on the merits is generally defined as the probability of a successful plan of reorganization. *In re Otero Mills*, 21 B.R. 777, 779 (D.N.M. 1982); *accord Calpine Corp. v. Nevada Power Co. (In re Calpine Corp.)*, 354 B.R. 45, 50 (Bankr. S.D.N.Y. 2006). Here, it is too early to determine whether it is probable that the Debtor will undergo a successful plan of reorganization. However, the Debtor has so far been able to work successfully with its other creditors, resulting in a consensual cash collateral order entered with the support of the Creditors Committee.

Third, the balance of the equities tips decidedly in favor of the Debtor. Specifically, the Debtor has informed NPF that it agrees to remain current with NPF on a weekly basis, although

the normal payment system only requires a monthly basis.  NPF subsequently rejected the offer.  The Court concludes that NPF will be adequately protected against any future harm.  NPF, like other prepetition creditors, will have to await confirmation of a reorganization plan to recover on its prepetition claim.

Finally, as for the public interest, "[i]n the context of bankruptcy proceedings, the 'public interest' element means 'the promoting of a successful reorganization.'" *In re Am. Film Tech., Inc.*, 175 B.R. 847, 849 (Bankr. D. Del. 1994).  This factor favors the Debtor.  If NPF is not enjoined, then, as discussed above, the Debtor may continue to lose jobs and employees.  It is unquestionable that in order to reorganize the Debtor needs to maintain a constant source of work and have qualified employees available to handle current and future jobs.  It cannot do so if it's unionized workforce leaves because NPF refuses to grant pension credit even if the debtor remains current on its post-petition obligations.

The Debtor also argued that it was entitled to relief based on sections 362(k) and 525 of the Bankruptcy Code.  In light of my ruling above, it is unnecessary for the Court to reach these other arguments.

**CONCLUSION**

For the foregoing reasons, the Court concludes that a temporary restraining order should issue, restraining and enjoining NPF from taking any actions to restrict the Debtor from continuing to make required contributions and to provide Debtor's employees with pension credits consistent with the CBA and the pension plan documents.  As proposed by the Debtor, the Debtor shall make required pension contributions to NPF on a weekly basis.

9

As required by Rule 65(d) of the FED. R. CIV. P., this Opinion states the reasons for the Court's ruling, and the terms that are to be included in the temporary restraining order. Debtor's counsel shall submit a proposed temporary restraining order consistent with this Opinion. The order shall apply to NPF, its officers, agents, servants, employees and attorneys, and other persons who are in active concert or participation with any of them. The temporary restraining order shall remain in effect for a period of 14 days, until 4:30 PM, October 27, 2010, unless the parties agree (subject to approval of the Court) to an extension of that time. Counsel for the parties shall contact my courtroom deputy to schedule a preliminary injunction hearing prior to the expiration of the temporary restraining order.

DATED: October 13, 2010
New York, New York

                                                                /s/Martin Glenn
                                                                MARTIN GLENN
                                           United States Bankruptcy Judge